UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ROBERT BYRD,                                    :

        Plaintiff,                          :

        -against-                           :

THE CITY OF NEW YORK, et al.,                   :

        Defendants.                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

17 Civ. 2166 (AJP)

**OPINION & ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

Pro se plaintiff Robert Byrd brings this § 1983 action alleging constitutional violations resulting from alleged misconduct by certain correctional officials and medical personnel at the Vernon C. Bain Center ("VCBC") and North Infirmary Command ("NIC") correctional facilities. (See generally Dkt. No. 21: 1st Am. Compl.) Presently before the Court is defendants' summary judgment motion (see Dkt. No. 56: Defs. Notice of Mot.) asserting, inter alia, that Byrd's claims against all unserved defendants should be dismissed (see Dkt. No. 60: Defs. Br. at 1 n.1), and his claims against the served defendants, Correction Officer ("CO") Brumfield, Captain Tillery, Dr. Ramos, and the City of New York (collectively the "City" or "defendants"), fail on the merits (see generally Defs. Br. at 10-23). The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 47.) For the reasons set forth below, Byrd's claims against the unserved defendants are DISMISSED without prejudice, and summary judgment is GRANTED for the remaining defendants.

## FACTS

The following relevant facts are undisputed for purposes of this motion. (See Dkt.

No. 60: Defs. Br. at 3-7 & n.3; <u>see generally</u> Dkt. No. 58: Defs. Rule 56.1 Stmt.)

Beginning in April 2016, Byrd was incarcerated in VCBC. (Dkt. No. 21: 1st Am. Compl. ¶ 2; <u>see</u> Defs. Rule 56.1 Stmt. ¶ 2.) Byrd claims that while in VCBC, he was housed in general population with "a mixture of people that are murder[ers] and rapists, slashers, [and] things of that nature." (Dkt. Nos. 59-1, 59-2: Byrd Dep. at 50, 132; <u>see</u> Defs. Rule 56.1 Stmt. ¶ 89.) Byrd's complaint alleges that on April 20, 2016, he began experiencing an acute spike in blood pressure. (1st Am. Compl. ¶¶ 3-4.) He further alleges that although he complained to CO Kimbrough, he was not given needed blood pressure medication for two days and eventually "collaps[ed] from extreme high B.P. [and] needing his meds." (<u>Id.</u> ¶ 3.) According to Byrd, "due to the delay in receiving proper care" he "suffered injuries which now cannot be reversed," including "los[s] of vision in his right eye, . . . retinal hemor[rh]aging," and "damage . . . to his optic nerve [and] macular vessels of both eyes." (<u>Id.</u> ¶ 4.)

Byrd asserts that on May 9, 2016, CO Brumfield entered his housing unit and "abusively . . . shout[ed] up a wave of threats against" him, stating that "[h]is stay [at] V.C.B.C. was going to be one he never forgot." (<u>Id.</u> ¶ 6; Defs. Rule 56.1 Stmt. ¶¶ 88-90.) Twenty minutes later, CO Brumfield again entered Byrd's housing unit and shouted that other inmates should not assist Byrd because he was not blind and that she saw him "driving a Mercedes Benz two weeks ago." (1st Am. Compl. ¶ 7; Defs. Rule 56.1 Stmt. ¶ 93; Byrd Dep. at 50-51.) According to Byrd, CO Brumfield "was trying to cause serious injuries with her words by absolutely irritating and agitating the inmate population." (Byrd Dep. at 53; Defs. Rule 56.1 Stmt. ¶ 92.)

Byrd testified that CO Brumfield's actions

caused injury of blood pressure that had no reason for spiking out of control[,] [e]scalation in the heart rate for not knowing what was going to happen, especially when you are asleep in an open dorm with 50 people. The coldness of the

> individuals until they found out different of how you're being treated when you are
> navigating walking around in a unit not being able to see where you are going. . . .
> The injury of inmates not wanting to assist based upon this lie that [CO Brumfield]
> told until a couple of weeks later when they realized it was a lie . . . .

(Byrd Dep. at 52.)  Byrd claims he experienced "serious dizziness," "[s]evere chest pains" and

sweating; "the only emotional injury" was that "[i]t was extremely stressful."  (Id. at 54.)

Byrd was transferred to NIC on May 19 or 20, 2016.  (1st Am. Compl. ¶ 10; Defs.

Rule 56.1 Stmt. ¶¶ 76-77.)  He alleges that Captain Tillery "had control over" his property "after he

was transfer[r]ed from V.C.B.C."  (1st Am. Compl. ¶ 17; see Byrd Dep. at 68, 134.)  That "property,

which consisted of clothing, debit/credit cards, wallet, driver[']s license, bank receipts, corporate

info, all came up missing by the time [Byrd] reached N.I.C."  (1st Am. Compl. ¶ 17; see Defs. Rule

56.1 Stmt. ¶¶ 103, 108; Byrd Dep. at 87.)  Byrd testified that Captain Tillery "refus[ed] to tell [him]

that [his property] w[as] missing."  (Byrd Dep. at 82; Defs. Rule 56.1 Stmt. ¶ 104.)

Byrd asserts that he needed access to his property to make copies of his bank cards

and ID card, in order to acquire new bank cards necessary to post bail.  (Byrd Dep. at 69-70; Defs.

Rule 56.1 Stmt. ¶¶ 109-10.)  Byrd testified that Captain Tillery and correction officials "conspired

by covering up and not allowing [him] to take copies of what was necessary to post [his] bail."

(Byrd Dep. at 68; see Defs. Rule 56.1 Stmt. ¶¶ 103-05.)  Specifically, Captain Tillery allegedly

provided Byrd with incorrect forms, which resulted in denial of his request to retrieve his property.

(Byrd Dep. at 68-69.)  Byrd testified that as a result of Captain Tillery's actions, he suffered

"emotional stress and the pain and suffering, the headaches" and "numerous nose bleeds . . . due to

not knowing . . . what was going on with the property so [he could] post" bail.  (Byrd Dep. at 69-70.)

While at NIC, between May 23 and June 3, 2016, Byrd "had problems trying to get

an eye appointment" and was not given "a real blind cane, [or a] treatment work-up to have surgery."

(1st Am. Compl. ¶ 10; <u>see</u> Byrd Dep. at 157.) Byrd was made "to wait 11 days to see an eye doctor." (1st Am. Compl. ¶ 10) According to Byrd, defendant Dr. Ramos "was the main doctor in charge of all the doctors at N.I.C. at the time." (Byrd Dep. at 163; Defs. Rule 56.1 Stmt. ¶ 83.) Byrd asserts that Dr. Ramos was at least partly responsible for delays in seeing an eye specialist, and that Dr. Ramos would "avoid speaking to [Byrd] regarding medical plans" by remaining silent while making rounds because he knew Byrd was blind. (1st Am. Compl. ¶ 11.) Dr. Ramos "also continued to write prescriptions for [Byrd] that he had allergies to." (<u>Id.</u>) Byrd asserts that on 124 occasions, his treating physicians and nurses failed to ensure that his vital signs were taken and/or recorded by 10:00 A.M. (<u>Id.</u> ¶ 19; <u>see</u> Byrd Dep. at 157.) Byrd also alleges that Dr. Ramos purposefully falsified his blood pressure readings. (Defs. Rule 56.1 Stmt. ¶ 85; Byrd Dep. at 157, 163.)

## SERVICE OF PROCESS

Byrd filed this case on March 24, 2017. (<u>See</u> Dkt. No. 2: Compl.) On April 21, 2017, Judge Daniels issued an Order of Service requesting, <u>inter alia</u>, that defendants waive service of summons as to all individually named corrections staff (Dkt. No. 6: Order of Service at 3-4) and provide residential addresses for the individually named DOC medical personnel (<u>id.</u> at 3). On May 1, 2017, defense counsel filed an executed waiver of service for defendants CO Brumfield and Captain Tillery (Dkt. No. 9: 5/1/17 Executed Waiver of Service); counsel filed an unexecuted waiver of service for all remaining correction officials (Dkt. No. 10: Unexecuted Waiver of Service). On May 22, 2017, defense counsel filed an executed waiver of service for the City. (Dkt. No. 12: 5/22/17 Executed Waiver of Service.) On July 31, 2017, the U.S. Marshal's Office filed a Return of Service Unexecuted for defendant Iyisha Bowen/Bowman. (Dkt. No. 29: Return of Service.) On August 7, 2017, defense counsel filed an executed waiver of service for defendant Dr. Ramos. (Dkt.

No. 33: 8/7/17 Executed Waiver of Service.)  Thus, the defendants properly served at this time are the City, CO Brumfield, Captain Tillery and Dr. Ramos.

The City notes (see Dkt. No. 60: Defs. Br. at 1 n.1) that Byrd still has not served the other defendants in this matter, and that the time to do so has passed under Fed. R. Civ. P. 4(m). Although Byrd's filings on the instant motion appear to take issue with the City's unexecuted waivers of service (see, e.g., Dkt. No. 71: Byrd Resp. Stmt. Of Facts ¶¶ 11-12 & p.18), he never raised service issues with the Court, nor does he now seek Court permission to serve those defendants beyond the 120-day period.  Byrd's claims against the unserved defendants—that is, all defendants except the City, CO Brumfield, Captain Tillery and Dr. Ramos—accordingly are <u>DISMISSED</u> without prejudice.  See, e.g., Spencer v. Ellsworth, 09 Civ. 3773, 2011 WL 1775963 at *4 (S.D.N.Y. May 10, 2011).

## ANALYSIS

## I.    SUMMARY JUDGMENT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers

v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[1] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to

---

[1] See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, 552 F. App'x 47, 49 (2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must extend extra consideration to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[2/] "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual

_____

[2/]    See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo
(continued...)

requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[3]

## II.  DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON BYRD'S FOURTEENTH AMENDMENT CLAIMS AGAINST CO BRUMFIELD AND DR. RAMOS[4]

---

[2]  (...continued)
Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[3]  See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 F. App'x 740 (2d Cir. 2002).

[4]  Defendants argue that they are entitled to summary judgment on these claims because Byrd failed to exhaust administrative remedies as required under the PLRA. (Dkt. No. 60: Defs. Br. at 7-10.) As amended by the PLRA, 42 U.S.C. § 1997e(a) provides that a prisoner must exhaust "available" administrative remedies before bringing suit in federal court. Specifically, this provision requires complete and proper exhaustion in accordance with the prison's administrative procedures. See, e.g., Woodford v. Ngo, 548 U.S. 81, 85, 94, 126 S. Ct. 2378, 2382-83, 2387-88 (2006). Defendants argue that Byrd failed to comply with the New York City Department of Correction's Inmate Grievance and Request Program ("IGRP"). (Defs. Br. at 8.) Byrd's claims against CO Brumfield, however, involve verbal harassment. "Plaintiff's claim that Defendant verbally harassed him would not be subject to the four tier grievance process of IGRP. 'Staff-on-inmate non-sexual harassment (e.g., verbal harassment)' is one category of conduct that is 'not subject' to the IGRP process. Although such complaints are required to be 'forward[ed]' by the IGRP staff to the Commanding Officer, it is not clear whether an inmate is required to take this step to exhaust his claim under the PLRA." Charles v. Gordon, 12 Civ. 8332, 2013 WL 6667632 at *5 (S.D.N.Y. Dec. 17, 2013) (citations omitted) (quoting New York City DOC Directive 3376, Inmate Grievance Request Program (effective Sept. 10, 2012), http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Program.pdf). Byrd's deliberate indifference claims against Dr. Ramos similarly are exempt: "By the IGRP's own
(continued...)

As a pretrial detainee, Byrd's federal constitutional claims are governed by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 2983 (1983); accord, e.g., Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); Bradshaw v. City of N.Y., 17 Civ. 1199, 2017 WL 6060781 at *10 n.10 (S.D.N.Y. Dec. 7, 2017) (Peck, M.J.). "A pretrial detainee's claims are evaluated under the Due Process Clause because, '[p]retrial detainees have not been convicted of a crime and thus "may not be punished in any manner—neither cruelly and unusually nor otherwise."'" Darnell v. Pineiro, 849 F.3d at 29.

### A.    Claims Against CO Brumfield

"To show that treatment during pre-trial detainment was . . . unconstitutional, a plaintiff must satisfy both an objective and a subjective test." Nimkoff v. Dollhausen, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010). Relevant here, the objective test requires a showing that the defendant's "conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015); accord, e.g., United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999) (to establish a violation of the Fourteenth Amendment, pretrial detainees must show that alleged mistreatment was "objectively sufficiently serious or harmful enough"). "The objective component is 'context specific, turning upon "contemporary

---

[4/]    (...continued)
terms, . . . claims alleging 'that a medical professional employed to provide services to inmates has failed to provide adequate medical care' are 'not subject to the IGRP process.'" Feliciano v. Anderson, 15 Civ. 4106, 2017 WL 1189747 at *8 (S.D.N.Y. Mar. 30, 2017). Moreover, even if Byrd failed to exhaust available administrative remedies (or if there are factual issues regarding exhaustion), "[t]he exhaustion requirement 'is not jurisdictional, and thus [allows] a district court to dismiss plainly meritless claims without addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies.'" Rickett v. Orsino, 10 Civ. 5152, 2013 WL 1176059 at *9 (S.D.N.Y. Feb. 20, 2013), R. & R. adopted, 2013 WL 1155354 (S.D.N.Y. Mar. 21, 2013).

standards of decency.'"'" <u>Johnson</u> v. <u>City of N.Y.</u>, 09 Civ. 4685, 2011 WL 1044852 at *4 (S.D.N.Y. Mar. 18, 2011).

Verbal harassment generally fails to satisfy the objective component for detainee claims because "isolated instances of verbal harassment 'do not involve a harm of federal constitutional proportions.'" <u>Charles</u> v. <u>Gordon</u>, 12 Civ. 8332, 2013 WL 6667632 at *5 (S.D.N.Y. Dec. 17, 2013).[5/]

Byrd asserts that on May 9, 2016, CO Brumfield entered his housing unit and shouted that his "stay [at] V.C.B.C. was going to be one he never forgot," and twenty minutes later, shouted that other inmates should not assist Byrd because he was not blind, and that she saw him "driving a Mercedes Benz two weeks ago." (<u>See</u> page 2 above.)

These two statements by CO Brumfield fail to achieve the magnitude of constitutionally offensive conduct. <u>See</u>, <u>e.g.</u>, <u>Myers</u> v. <u>City of N.Y.</u>, 2012 WL 3776707 at *9

---

[5/]    <u>Accord</u>, <u>e.g.</u>, <u>Williams</u> v. <u>Dubray</u>, 557 F. App'x 84, 86 (2d Cir. 2014) ("[V]erbal harassment, without more, is not actionable under § 1983."); <u>Cole</u> v. <u>Fischer</u>, 379 F. App'x 40, 43 (2d Cir. 2010); <u>Boddie</u> v. <u>Schnieder</u>, 105 F.3d 857, 861 (2d Cir. 1997) ("The isolated episodes of harassment . . . are despicable . . . [b]ut they do not involve a harm of federal constitutional proportions as defined by the Supreme Court."); <u>Purcell</u> v. <u>Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called [plaintiff] names also did not allege any appreciable injury and was properly dismissed."); <u>Keaton</u> v. <u>Ponte</u>, 16 Civ. 3063, 2017 WL 3382314 at *10 (S.D.N.Y. Aug. 4, 2017); <u>Myers</u> v. <u>City of N.Y.</u>, 11 Civ. 8525, 2012 WL 3776707 at *9 (S.D.N.Y. Aug. 29, 2012), <u>aff'd</u>, 529 F. App'x 105 (2d Cir. 2013); <u>Vogelfang</u> v. <u>Capra</u>, 889 F. Supp. 2d 489, 508 (S.D.N.Y. 2012) (citing cases); <u>Roseboro</u> v. <u>Gillespie</u>, 791 F. Supp. 2d 353, 373 (S.D.N.Y. 2011) (Peck, M.J.) (citing cases); <u>Mateo</u> v. <u>Fischer</u>, 682 F. Supp. 2d 423, 432 (S.D.N.Y. 2010) (citing cases); <u>Murray</u> v. <u>Pataki</u>, No. 03-CV-1263, 2007 WL 956941 at *8 (N.D.N.Y. Mar. 29, 2007) ("[I]t is well settled law in this Circuit that '42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.'"), <u>aff'd</u>, 378 F. App'x 50 (2d Cir. 2010); <u>see also</u>, <u>e.g.</u>, <u>Ruffino</u> v. <u>Murphy</u>, No. 09-CV-1287, 2010 WL 1444562 at *4 (D. Conn. Apr. 12, 2010) ("[D]istrict courts within the Second Circuit have held that allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under section 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.").

("'[V]erbal harassment or profanity alone, . . . no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and is therefore not actionable.'"). To begin, CO Brumfield's statement that Byrd's "stay [at] V.C.B.C. was going to be one he never forgot" (see page 2 above) is too vague to support a claim. See, e.g., Barnes v. Cty. of Monroe, 85 F. Supp. 3d 696, 739-40 (W.D.N.Y. 2015) (defendant CO's threats that "he would kill Plaintiff," a pretrial detainee, were "too general to support a constitutional claim" under § 1983 absent any injury or damage).

CO Brumfield's later statement to the general population that Byrd was feigning blindness likewise fails to satisfy the objective test. Byrd asserts that this comment was intended "to cause serious injuries . . . by absolutely irritating and agitating the inmate population." (See page 2 above.)[6] Accepting Byrd's testimony as true, the only practical effects of the comment were to cause the inmate population to treat Byrd with "coldness," as well as "inmates not wanting to assist [him] based upon this lie that [CO Brumfield] told until a couple of weeks later when they realized it was a lie." (See pages 2-3 above.) Analysis of the objective component for pretrial confinement claims "is 'context specific, turning upon "contemporary standards of decency,"'" Johnson v. City of N.Y., 2011 WL 1044852 at *4, and nothing about the context of this case—either CO Brumfield's statement or its alleged effect on the inmate population—suggests that contemporary standards of

---

[6]    To the extent Byrd alleges a claim under the "state-created danger" doctrine, which "provides that a substantive due process claim arising out of private harm may be stated if the state or its agents 'in some way had assisted in creating or increasing the danger to the victim,'" the Court notes that a "plaintiff may only state a claim under this [doctrine] if he alleges that he suffered from an act of violence." Cooper v. City of N.Y., 13 Civ. 7590, 2014 WL 5315074 at *3 (S.D.N.Y. Oct. 17, 2014). "Because plaintiff does not claim to have suffered from any violent act, he fails to state a claim under the Fourteenth Amendment based on a theory of state-created danger." Id.; see also pages 2-3 above.

decency were violated.[7]

Byrd testified that CO Brumfield's statement resulted in his blood pressure "spiking out of control[, and] [e]scalation in the heart rate for not knowing what was going to happen, especially when you are asleep in an open dorm with 50 people." (See page 2 above.) He experienced "serious dizziness," "[s]evere chest pains" and sweating. (See pages 2-3 above.) It is true that to establish a claim, a plaintiff-detainee alleging verbal harassment must show, at a minimum, that verbal harassment was accompanied by some "appreciable injury." See Purcell v. Coughlin, 790 F.2d at 265.[8] But Byrd's symptoms were merely the physical manifestations of emotional distress caused by two statements that, as discussed above, were objectively unoffensive to the Constitution. As such, the facts of this case are analogous to those of Barnes v. Cty. of

---

[7]   See, e.g., Corley v. City of N.Y., 14 Civ. 3202, 2017 WL 4357662 at *13 (S.D.N.Y. Sept. 28, 2017) (dismissing verbal harassment claim based on defendant correction officers "label[ing] [pretrial detainee] a 'snitch' and a 'child molester,'" which caused "resentments," verbal altercations, harassment, and demands to see his paperwork from fellow inmates, but no physical injury).

[8]   Accord, e.g., Corley v. City of N.Y., 2017 WL 4357662 at *13; Rickett v. Orsino, 10 Civ. 5152, 2013 WL 1176059 at *11 (S.D.N.Y. Feb. 20, 2013) (verbal harassment claim dismissed where "Plaintiff admit[ted] that he was not physically injured by" defendants' conduct and "offered no evidence of an 'appreciable injury' apart from humiliation"), R. & R. adopted, 2013 WL 1155354 (S.D.N.Y. Mar. 21, 2013); Myers v. City of N.Y., 2012 WL 3776707 at *9 ("'[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and is therefore not actionable.'" (emphasis added)); Malik v. City of N.Y., 11 Civ. 6062, 2012 WL 3345317 at *12 (S.D.N.Y. Aug. 15, 2012) ("Verbal abuse, threats, and intimidation standing alone, without injury or damage, do not amount to a constitutional deprivation." (emphasis added)), R. & R. adopted, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012); D'Attore v. N.Y. City, 10 Civ. 6646, 2012 WL 2952853 at *6 (S.D.N.Y. July 19, 2012) (Plaintiff "claims that one of the defendants directed a racial slur at him, but he does not claim any appreciable injury flowing from the alleged mistreatment. Therefore, he has failed to make out a claim for violation of equal protection . . . ."); Edwards v. Horn, 10 Civ. 6194, 2012 WL 473481 at *3-4 (S.D.N.Y. Feb. 14, 2012) (citing cases), R. & R. adopted, 2012 WL 760172 (S.D.N.Y. Mar. 8, 2012).

Monroe, 85 F. Supp. 3d at 739-40. In Barnes, the court dismissed a pretrial detainee's claim based on a CO's singular comment that allegedly "caused [the detainee] to violently 'shake uncontrollably.'" Id. Despite the detainee's physical discomfort, the court found that the precipitating comment was insufficiently serious to support a constitutional claim. Id. at 739.

The holding in Barnes can be contrasted with that of Ruffino v. Murphy, No. 09-CV-1287, 2010 WL 1444562 (D. Conn. Apr. 12, 2010). In Ruffino, the plaintiff pretrial detainee alleged numerous instances of verbal and physical harassment by jail guards occurring over several months. See 2010 WL 1444562 at *1-3. The court held that where such harassment "resulted in mental stress, worry, discomfort and emotional harm, and caused him to fear going to court," the plaintiff's "injur[ies] resulting from the purported verbal harassment [were] sufficient to support a claim that [the detainee] was harassed by the defendants as a form of punishment, in violation of the Fourteenth Amendment." Id. at *4.[9]

Byrd's claims are based on two statements made within twenty minutes of each other on a single day, rather than a prolonged or extensive pattern of verbal harassment. (See page 2 above.) Accordingly, and for the reasons already discussed, those two comments fail to establish that CO Brumfield's "conduct was objectively . . . 'sufficiently serious' to reach constitutional dimensions." Crawford v. Cuomo, 796 F.3d at 256. Defendants' summary judgment motion is

---

[9] Notably, in support of its holding, the Ruffino court cited Proverb v. O'Mara, No. 08-CV-431, 2009 WL 368617 at *13 (D.N.H. Feb. 13, 2009), R. & R. adopted, 2009 WL 1292126 (D.N.H. May 6, 2009). In Proverb, the plaintiff pretrial detainee "claim[ed] that he was threatened and taunted with the purpose of causing him to be afraid, and to make his quality of life in the [jail] unpleasant." 2009 WL 368617 at *13. The court held that this claim survived a motion to dismiss as to several listed defendants, but "excluded from [its] list" one defendant "who, [plaintiff] claims, taunted him on one occasion." Id. As to that defendant, the court found the plaintiff's "allegations . . . [we]re insufficient to assert a constitutional cause of action." Id.

GRANTED as to Byrd's claims against CO Brumfield.[10/]

## B.     Claims Against Dr. Ramos

"[N]ot every lapse in medical care is a constitutional wrong." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). Rather, a pretrial detainee's deliberate indifference to medical needs claim contains two requirements:

> First, the deprivation of medical care must have been 'sufficiently serious.' Second, the defendant must have acted or failed to act with 'a sufficiently culpable state of mind,' which, 'in prison conditions cases' is 'deliberate indifference to inmate health or safety.' Under the Fourteenth Amendment, deliberate indifference is measured from an objective perspective.

Smith v. Outlaw, 15 Civ. 9961, 2017 WL 4417699 at *2 (S.D.N.Y. Sept. 30, 2017) (citations omitted); see also, e.g., McKinney v. New Haven Police Dep't, No. 17-CV-1663, 2017 WL 5137583 at *4 (D. Conn. Nov. 6, 2017); Davis v. McCready, 14 Civ. 6405, 2017 WL 4803918 at *4-5 (S.D.N.Y. Oct. 23, 2017). While the subjective element under the Fourteenth Amendment varies from Eighth Amendment cases, the objective element remains the same. See, e.g., White v. City of N.Y., 16 Civ. 6183, 2017 WL 3575700 at *3 (S.D.N.Y. Aug. 17, 2017) ("The objective prong is the same regardless of whether the plaintiff is a pretrial detainee or a prisoner."); Fernandini v. United States, 15 Civ. 3843, 2017 WL 3208587 at *7 n.5 (S.D.N.Y. July 26, 2017) (same); Cuffee v. City of N.Y., 15 Civ. 8916, 2017 WL 1134768 at *5 (S.D.N.Y. Mar. 27, 2017) (same).

As to the objective element, "[o]nly deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment

---

[10/]     Byrd's First Amended Complaint also alleges that CO Brumfield's actions violated "Article 35 of Correctional Law." (Dkt. No. 21: 1st Am. Compl. ¶ 7.) However, that Article of the New York Correction Law contains no substantive provisions. See generally N.Y. Correct. Law art. 35 ("Laws Repealed; when to Take Effect"). The Court therefore does not address this further.

violation." <u>Salahuddin</u> v. <u>Goord</u>, 467 F.3d at 279 (quotations omitted).  Determining whether an objectively serious deprivation occurred involves two inquiries:

> The first inquiry is whether the prisoner was actually deprived of adequate medical care.  As the Supreme Court has noted, the prison official's duty is only to provide reasonable care.  Thus, "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause," and, conversely, failing "to take reasonable measures" in response to a medical condition can lead to liability.

> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.  For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious.  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower.  For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  Thus, although we sometimes speak of a "serious medical condition" as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

<u>Id.</u> at 279-80 (citations omitted); <u>see also</u>, <u>e.g.</u>, <u>Cooper</u> v. <u>Orange Cty.</u>, 15 Civ. 10075, 2017 WL 3309754 at *3-4 (S.D.N.Y. Aug. 2, 2017); <u>Fernandini</u> v. <u>United States</u>, 2017 WL 3208587 at *7.

Byrd asserts that between May 23 and June 3, 2016, he "had problems trying to get an eye appointment" and was made to wait for "a real blind cane" and a "treatment work-up to have surgery." (<u>See</u> pages 3-4 above.)  Additionally, he had "to wait 11 days to see an eye doctor."  (<u>See</u> page 4 above.)  Byrd also asserts that on 124 occasions, his treating physicians and nurses failed to ensure that his vital signs were taken and/or recorded by 10:00 A.M.  (<u>Id.</u>)

As the City notes, Dr. Ramos is the only individual named and served in relation to

Byrd's delayed medical treatment claims, and it does not appear that Dr. Ramos was personally involved in any of these delays. (See Dkt. No. 60: Defs. Br. at 11 & n.4.) "It is well settled in this Circuit that the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Jones v. Parmley, No. 16-3603-CV, 2017 WL 4994468 at *3 (2d Cir. Nov. 2, 2017).[11/] A plaintiff may establish this requirement by showing:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[12/] Byrd has failed to allege—let alone adduce any evidence showing—that Dr. Ramos was personally involved in any delays in medical treatment under the Colon factors. Construing his testimony liberally, Byrd claims that Dr. Ramos should be liable for the delays because he "was the main doctor in charge of all the doctors at N.I.C. at the

---

[11/] Accord, e.g., Warren v. Pataki, 823 F.3d 125, 136 (2d Cir.), cert. denied, 137 S. Ct. 380 (2016) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'"); Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) ("[T]he 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"); Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"); Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations."); Manley v. Grossman, 13 Civ. 1974, 2017 WL 4326541 at *12 (S.D.N.Y. Sept. 27, 2017).

[12/] "It is an open issue in this Circuit as to whether all five of these factors survived the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009)." Manley v. Grossman, 2017 WL 4326541 at *12; see also, e.g., Drew v. City of N.Y., 16 Civ. 0594, 2016 WL 4533660 at *10-11 (S.D.N.Y. Aug. 29, 2016) (Peck, M.J.).

time." (See page 4 above.) It is well settled, however, that "respondeat superior cannot form the basis for a § 1983 claim." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (per curiam).[13]

Furthermore, Byrd has not produced any evidence that his injuries or condition worsened, or that he was subjected to an unreasonable risk of future harm, because of the above-described delays in treatment. See, e.g., Gantt v. Horn, 09 Civ. 7310, 2013 WL 865844 at *9 (S.D.N.Y. Mar. 8, 2013) (Plaintiff "has not alleged that any delays in his treatment caused any symptoms of his underlying illnesses to worsen, or that any delays materially altered the way his diseases have since affected him. Furthermore, [plaintiff] has not alleged, beyond making conclusory claims, that any delay in treatment, or any inadequacy of such treatment, has put him at an 'unreasonable risk of future harm.'"); Ferguson v. Cai, 11 Civ. 6181, 2012 WL 2865474 at *4 (S.D.N.Y. July 12, 2012) (Plaintiff "has not alleged that the single delay in treatment caused any symptoms of his underlying illness to worsen, nor that it materially altered the way in which his disease thereafter affected him.").

Finally, Byrd asserts that Dr. Ramos would "avoid speaking to [him] regarding medical plans" by remaining silent while making rounds, that Dr. Ramos would "write prescriptions for [Byrd] that he had allergies to," and that Dr. Ramos falsified Byrd's blood pressure readings.

---

[13]     Accord, e.g., Allah v. Annucci, 16 Civ. 1841, 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 7, 2017) ("'[I]n an action under 42 U.S.C. § 1983, defendants cannot be held liable under a theory of respondeat superior.'"); Doe v. Lima, 14 Civ. 2953, 2017 WL 3835959 at *22 (S.D.N.Y. Aug. 31, 2017) ("Liability under § 1983 requires that a defendant sued in his or her individual capacity be personally involved in the violation of the federal right; a defendant's supervisory authority is insufficient in itself to create liability under § 1983."); Rossi v. Fishcer, 13 Civ. 3167, 2015 WL 769551 at *15 (S.D.N.Y. Feb. 24, 2015) ("Individual liability under section 1983 may not be anchored in a theory of respondeat superior."); Wilson v. City of N.Y., 12 Civ. 3021, 2013 WL 4710386 at *4 (S.D.N.Y. Aug. 30, 2013); Walker v. Clemson, 11 Civ. 9623, 2012 WL 2335865 at *7 (S.D.N.Y. June 20, 2012), R. & R. adopted, 2012 WL 3714449 (S.D.N.Y. Aug. 28, 2012).

(See page 4 above.) Byrd, however, has not alleged any injuries resulting from these actions. (See generally Dkt. No. 21: 1st Am. Compl. ¶ 11; Dkt. No. 71: Byrd Resp. Br.) On review of Byrd's voluminous medical records, the Court finds no evidence indicating that Dr. Ramos ever personally issued prescriptions to Byrd or took his blood pressure.[14] Nor has Byrd adduced any evidence, apart from his own conclusory assertions, that Dr. Ramos ever falsified medical records. "'[C]onclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion.'" Wood v. N.Y.C. Transit Auth., 699 F. App'x 76, 77 (2d Cir. 2017).[15]

Defendants' summary judgment motion is GRANTED as to Byrd's claims against Dr. Ramos.[16]

---

[14] Although not filed on ECF, the City provided the Court with copies of Byrd's medical records received from Correctional Health Services, numbered D000049 through D000565.

[15] For the same reasons—i.e., lack of supporting evidence or developed argument—the Court grants defendants' summary judgment motion as to any state law "malpractice" claims raised in Byrd's First Amended Complaint. (See Dkt. No. 21: 1st Am. Compl. ¶¶ 9-11; see also Dkt. No. 58: Defs. Rule 56.1 Stmt. ¶ 87.) To the extent Byrd attempted to support these claims in his Response Brief, he has done so using only his own statements as evidence. (See generally Byrd Resp.) Under New York law, a "[p]laintiff's own medical analysis, provided in his pro se briefs, cannot be considered because he is not qualified as a medical expert." Chase v. Cayuga Med. Ctr. at Ithaca, Inc., 2 A.D.3d 990, 991, 769 N.Y.S.2d 311, 312 (3d Dep't 2003); see also, e.g., Holbrook v. United Hosp. Med. Ctr., 248 A.D.2d 358, 359, 669 N.Y.S.2d 631, 632 (2d Dep't 1998) ("General allegations of medical malpractice, merely conclusory in nature and unsupported by competent evidence tending to establish the essential elements of the claim, are insufficient to defeat a defendant physician's entitlement to summary judgment.").

[16] Byrd's Response Brief contains additional allegations against Dr. Ramos—for example, that on October 25, 2017, Dr. Ramos erroneously or maliciously issued an order stating that Byrd was not wheelchair bound. (See Byrd Resp. Br. Stmt. Of Facts ¶¶ 17-18; see also Dkt. No. 71-1: Byrd Exs. P0132, P0157.) However, "'it is well settled that a Court should not on summary judgment consider factual allegations and legal theories not raised in the complaint.'" Brannon v. City of N.Y., 09 Civ. 4335, 2016 WL 270399 at *1 n.1 (S.D.N.Y. Jan. 21, 2016); accord, e.g., Wiltshire v. Wanderman, 13 Civ. 9169, 2015 WL 4164808 at *1 n.3 (S.D.N.Y. July 10, 2015) (citing cases); Salemo v. Murphy, 11 Civ. 2525, 2012 WL (continued...)

### III.    DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON BYRD'S CLAIMS AGAINST CAPTAIN TILLERY

Byrd alleges that after his transfer to NIC on May 19, 2016, his property "came up missing." (See page 3 above.)  He alleges that Captain Tillery was at least partly responsible for this temporary deprivation because Tillery "had control over" the property.  (Id.)  Byrd also testified that Tillery "refus[ed] to tell [him] that [his property] w[as] missing," and along with others "conspired by covering up and not allowing [him] to take copies of what was necessary to post [his] bail" by providing Byrd with incorrect forms.  (Id.)

To the extent Byrd alleges that he was deprived of property without due process, such claims are not cognizable under § 1983.

> "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."  In fact, "the state's action is not complete unless and until it provides or refuses to provide a suitable post[-]deprivation remedy."  In applying this doctrine, "the Second Circuit has determined that 'New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action.'"  District courts thus routinely dismiss claims by inmates who assert that they were deprived of property by corrections officers.

Banks v. Cty. of Westchester, 168 F. Supp. 3d 682, 694 (S.D.N.Y. 2016) (citations omitted; citing cases).[17/]  Although Byrd has alleged that Captain Tillery and other correction officials "conspired,"

---

[16/]    (...continued)
4714765 at *2 (S.D.N.Y. Sept. 27, 2012) ("[A]lthough courts afford pro se plaintiffs a fair measure of procedural latitude, this latitude typically does not extend so far as permitting a plaintiff to supplement the claims in his complaint with additional allegations in his motion papers." (citation omitted)).  The Court accordingly does not address these claims.

[17/]    Accord, e.g., Willey v. Kirkpatrick, 801 F.3d 51, 61 (2d Cir. 2015); West v. City of N.Y., 13 Civ. 5155, 2014 WL 4290813 at *6 (S.D.N.Y. Aug. 28, 2014); JCG v. Ercole, 11 Civ. 6844, 2014 WL 1630815 at *32 (S.D.N.Y. Apr. 24, 2014) ("[T]he existence of an adequate post-deprivation state remedy precludes a due process claim under § 1983."), R. & R.
(continued...)

he has not alleged or testified to a pattern and practice of DOC employees depriving inmates of property in order to prevent them from making bail. (<u>See generally</u> Dkt. No. 21: 1st Am. Compl.; Dkt. Nos. 59-1, 59-2: Byrd Dep.; Dkt. No. 71: Byrd Resp. Br.) "Because the Complaint thus suggests the deprivation of property was 'effected through random and unauthorized conduct of a state employee'—as opposed to 'established state procedures'—Plaintiff has an adequate post-deprivation remedy under state tort law." <u>Banks</u> v. <u>Cty. of Westchester</u>, 168 F. Supp. 3d at 695 (quoting <u>Hudson</u> v. <u>Palmer</u>, 468 U.S. 517, 532-33, 104 S. Ct. 3194, 3203 (1984)).

Furthermore, Byrd has proffered no evidence supporting his claims against Captain Tillery, other than his conclusory assertions. (<u>See</u> cases cited on page 8 & n.3; page 18 & n.15 above.) Byrd has submitted an inmate property release form dated June 24, 2016 and marked "Disapproved," as well as a letter dated June 25, 2016 purporting to be Byrd's "second request trying to find out where my property is." (<u>See</u> Dkt. No. 71-1: Byrd Exs. P0010-11.) But neither of these documents supports Byrd's contention that he was given the incorrect form, let alone that Captain Tillery intentionally gave Byrd the incorrect form as part of a conspiracy to prevent him from making bail.[18] (<u>See</u> page 3 above.) Nor has Byrd alleged or proved that he would have made bail absent Captain Tillery's actions. (<u>See generally</u> 1st Am. Compl.; Byrd Dep.)

Defendants' summary judgment motion therefore is <u>GRANTED</u> as to Byrd's claims

---

[17] (...continued)
<u>adopted</u>, 2014 WL 2769120 (S.D.N.Y. June 18, 2014); <u>Malik</u> v. <u>City of N.Y.</u>, 11 Civ. 6062, 2012 WL 3345317 at *11 (S.D.N.Y. Aug. 15, 2012), <u>R. & R. adopted</u>, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012); <u>Green</u> v. <u>Niles</u>, 11 Civ. 1349, 2012 WL 987473 at *6 (S.D.N.Y. Mar. 23, 2012) ("[A] prison's loss of . . . inmate property 'whether intentional or negligent . . . will not support a due process claim redressable under § 1983 if "adequate state post-deprivation remedies are available."'").

[18] Indeed, Byrd's filings indicate that it was unserved defendant CO Grayson who "checked the box on plaintiff's property release [form], 'Disapproved.'" (Byrd Resp. Stmt. of Facts ¶ 9.)

against Captain Tillery.[19]

## IV. THE CITY IS GRANTED SUMMARY JUDGMENT ON BYRD'S MONELL CLAIMS

It is well established that a municipality may not be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of respondeat superior. E.g., Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978); Johnson v. N.Y.C. Police Dep't, No. 15-1379, 2016 WL 3277261 at *2 (2d Cir. June 8, 2016); Littlejohn v. City of N.Y., 795 F.3d 297, 314-15 (2d Cir. 2015).[20] Rather, in order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy. See, e.g., Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359 (2011); Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 1297-300 (1986); Johnson v. N.Y.C. Police Dep't, 2016 WL 3277261 at *2; Littlejohn v. City of N.Y., 795 F.3d at 314-15.[21]

---

[19] Byrd's Response Brief additionally states that Captain Tillery "should have been suspended/fired for the delay in medical treatment." (Byrd Resp. Stmt. Of Facts ¶ 8.) The record before the Court contains no evidence regarding a delay in medical treatment caused by Captain Tillery, and, in any event, this claim was not raised in Byrd's First Amended Complaint. (See generally 1st Am. Compl.; Byrd Dep.) For the reasons already stated (see page 18 n.16) the Court does not address this claim further.

[20] See also, e.g., Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991); White v. Cty. of Dutchess, 15 Civ. 8744, 2016 WL 4449720 at *5 (S.D.N.Y. Aug. 23, 2016); Walker v. Ponte, 14 Civ. 8507, 2016 WL 4411415 at *8 (S.D.N.Y. Aug. 18, 2016); Muhammad v. N.Y. City, 15 Civ. 5603, 2016 WL 4367970 at *5 (S.D.N.Y. Aug. 12, 2016); Roberts v. City of N.Y., 14 Civ. 5198, 2016 WL 4146135 at *7 (S.D.N.Y. Aug. 2, 2016).

[21] See also, e.g., Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011); Batista v.
(continued...)

Byrd has failed to plead or adduce evidence of any municipal custom or policy giving rise to the harms described in his complaint. (See generally Dkt. No. 21: 1st Am. Compl.; Dkt. No. 71: Byrd Resp.; see also Dkt. No. 60: Defs. Br. at 23.) Rather, Byrd's pleadings and testimony focus on the actions of individual defendants. (See generally 1st Am. Compl.; Dkt. Nos. 59-1, 59-2: Byrd Dep.; Byrd Resp.) But "absent extremely severe circumstances, a plaintiff must allege facts—other than those giving rise to individual liability—supporting an inference that the municipality has an unconstitutional policy." Baines v. City of N.Y., 10 Civ. 9545, 2014 WL 1087973 at *3 (S.D.N.Y. Mar. 19, 2014).

In addition, Byrd has failed to prove any underlying constitutional violation. (See Sections II-III above.) "It is well established that a Monell claim cannot lie in the absence of an underlying constitutional violation." DeRaffele v. City of New Rochelle, 15 Civ. 282, 2017 WL 2560008 at *6 (S.D.N.Y. June 13, 2017).[22/] Where "the district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell [is] entirely correct." Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006).

The City's summary judgment motion is GRANTED as to Byrd's Monell claims

---

[21/]    (...continued)
Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); Masciotta v. Clarkstown Cent. Sch. Dist., 14 Civ. 7128, 2016 WL 4449660 at *11 (S.D.N.Y. Aug. 23, 2016); Jones v. City of N.Y., No. 16-CV-1289, 2016 WL 4435220 at *2 (E.D.N.Y. Aug. 19, 2016); Walker v. Ponte, 2016 WL 4411415 at *8; Sanabria v. Tezlof, 11 Civ. 6578, 2016 WL 4371750 at *8 (S.D.N.Y. Aug. 12, 2016); Muhammad v. N.Y.C., 2016 WL 4367970 at *5; Roberts v. City of N.Y., 2016 WL 4146135 at *7.

[22/]    Accord, e.g., Borg v. Town of Wesport, 685 F. App'x 10, 11 n.2 (2d Cir.) ("[W]ithout an underlying constitutional violation, Plaintiffs' claim under Monell . . . cannot stand."), cert. denied, 2017 WL 4391037 (2017); Bradshaw v. City of N.Y., 17 Civ. 1199, 2017 WL 6060781 at *7 n.8 (S.D.N.Y. Dec. 7, 2017) (Peck, M.J.); Blount v. Moccia, 16 Civ. 4505, 2017 WL 5634680 at *14 (S.D.N.Y. Nov. 21, 2017); Antic v. City of N.Y., 16 Civ. 2425, --- F. Supp. 3d ----, 2017 WL 3208588 at *8 (S.D.N.Y. July 27, 2017).

against the City.

## CONCLUSION[23]

For the reasons set forth above, Byrd's claims against the unserved defendants are

DISMISSED without prejudice and defendants' summary judgment motion (Dkt. No. 56) is

GRANTED in its entirety.  The Clerk of Court accordingly shall enter judgment dismissing the case.


Dated:       New York, New York
              January 2, 2018



**Andrew J. Peck**
United States Magistrate Judge


Copies to:     All Counsel (ECF)
              Robert Byrd (mail)

---

[23] If Byrd requires copies of any of the cases reported only in Westlaw, he should request copies from defense counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.